**STATE of Oklahoma ex rel. OKLAHOMA BAR ASSOCIATION, Complainant,**

v.

**James R. JONES, Respondent.**

**S.C.B.D. No. 2540.**

Supreme Court of Oklahoma.

June 14, 1977.

John M. Amick, Gen. Counsel, Oklahoma Bar Ass'n, Oklahoma City, for complainant.

James L. Kincaid, Conner, Winters, Ballaine, Barry & McGowen, Thomas R. Brett, Jones, Givens, Brett, Gotcher, Doyle, Bogan, Inc., Tulsa, for respondent.

LAVENDER, Vice Chief Justice:

James R. Jones (respondent), member of the Oklahoma Bar Association, through a plea of guilty was convicted as charged of the offense of a REPORTING VIOLATION OF THE FEDERAL ELECTION CAMPAIGN ACT OF 1971 (Title 2 U.S.C., §§ 434 and 441) in the United States District Court for the District of Columbia, Docket No. 76–37. He was fined the amount of two hundred dollars.

The Oklahoma Bar Association (complainant) brings a show cause proceeding in this court seeking to discipline respondent under Art. 10, § 4(b), Rules-Bar Association. Complainant alleges conviction of respondent of a crime involving moral turpitude. This is the requirement for discipline under § 4(b). By motion, respondent seeks dismissal. He argues the conviction was not for a crime involving moral turpitude. Although the Rules have been amended since this proceeding was started, both the old and new Rules require that the crime involve moral turpitude before one may be disciplined in a summary proceeding.

The information in the federal criminal action shows the respondent, as a candidate seeking election to the office of United States Representative from the First Congressional District of Oklahoma, received a cash campaign contribution of some one or two thousand dollars. His report, filed with the Clerk of the United States House of Representatives and covering the period of time of this contribution, reflected no receipts.

Although a formal proceeding to discipline respondent could have been conducted under Art. 10, § 4(a) Rules-Bar Association, in the summary-type disciplinary proceedings authorized by § 4(b) and which are here involved, an important condition precedent must be satisfied. That condition is *a member must have been convicted of a crime involving moral turpitude.* The charge is constituted by the indictment or information, the judgment and sentence of conviction. These documents are conclusive evidence of the commission of the crime upon which the conviction is based. This alone is sufficient for discipline, coming within the framework of a show cause proceeding. At this point, the burden shifts to the charged member. He may seek a hearing with a right to submit a brief and evidence to explain his conduct or seek mitigation. Here, through his motion to dismiss, the respondent challenged the satisfaction of the condition precedent. He urges he has not been convicted of a crime involving moral turpitude.

Title 2 U.S.C., § 434[1] required the reporting of the campaign contribution described in the information. It was not. Section 441[2] makes that reporting violation a crime. Here, the sentence which only imposed a fine classifies the crime a misdemeanor. The crime of § 441 requires no willful intent. As said in *United States v. Finance Committee to Re-elect The President*, 165 U.S.App.D.C. 371, 507 F.2d 1194, 1197 (1974):

"* * * Since the present Act § 441, says nothing about 'willful' violations, it is reasonable to suppose, * * * that the Congress intended that the elements of a non-willful offense, whatever it might be, were all that was necessary for a conviction."

Respondent contends an element of "moral turpitude" is the mental element of a willful intent to do a wrong. The Association agrees this is substantially accurate.

Moral turpitude implies something immoral in itself, regardless of the fact whether it is punishable by Law. *Pippin v. State*, 197 Ala. 613, 73 So. 340, 342 (1916)[3].

In the concept behind the phrase "moral turpitude," the element of intent and knowledge are regarded as important.[4] This court in *Oklahoma Bar Association v. Houts*, Okl., 420 P.2d 498 (1966) disciplined an attorney convicted of a crime containing a willful intent. There we said:

"The conviction in the criminal case was for *wilfully and knowingly attempting to evade income taxes by filing a false and fraudulent income tax return*. This suggests that moral turpitude is involved. * * *."

Here, prior to a hearing seeking to explain the charged member's conduct or seeking mitigation by circumstance, an attack is made as to the lack of the necessary condition precedent for a § 4(b) disciplinary proceeding. For the purpose of determining if there has been a conviction of a crime involving moral turpitude, we cannot consider surrounding circumstances. In deciding whether moral turpitude is involved, we are limited to the charge contained in the documents permitted in the origination of the summary proceedings of § 4(b). The

---

1. "§ 434. Reports by political committees and candidates—Receipts and expenditures; completion date, exception

    (a)(1) Except as provided by paragraph (2), each treasurer of a political committee supporting a candidate or candidates for election to Federal office, and *each candidate for election to such office, shall file with the Commission reports of receipts and expenditures on forms to be prescribed or approved by it.* The reports referred to in the preceding sentence shall be filed as follows: (Emphasis added.) * * *"

2. "§ 441. Penalties for violations

    (a) Any person who violates any of the provisions of this [subchapter] shall be fined not more than $1,000 or imprisoned not more than one year, or both.

    (b) In case of any conviction under this [subchapter], where the punishment inflicted does not include imprisonment, such conviction shall be deemed a misdemeanor conviction only."

3. *Pippin, supra*, p. 342, quoting:

    "As said in the case of *Fort v. Brinkley*, 87 Ark. 400, 112 S.W. 1084:

    'Moral turpitude implies something immoral in itself, regardless of the fact whether it is punishable by law. The doing of the act itself, and not its prohibition by statute, fixes the moral turpitude.' (Citations omitted.)"

4. Bradway, "Moral Turpitude As the Criterion of Offenses," 24 Cal.L.Rev. 9, 19, quoting:

    "The concept behind the phrase 'moral turpitude' involves factors as to which there is agreement as well as another area of conflict. The elements of intent and knowledge are regarded * * * as important.37 But beyond this the road forks."

    "37 There seems to be no particular objection to the proposition that the mental element is an important one in determining the presence of moral turpitude. If the wrong is unintentional *or if the act is made improper by statute without regard to the mental element, it is not moral turpitude. Pullman Car Co. v. Central Trans. Co.* (C.C.E.D.Pa.1894), 65 Fed. 158. Similarly, *if the mental element is negligence moral turpitude is not involved.* 'Even in the case of wilful acts, conventional ideas of morality often seem to be largely independent of the harmfulness of the act, and to be based rather on a traditional or intuitive belief that certain acts indicate a depraved state of mind.' Note (1926) 5 Neb. L.Bull. 216, 217. Again the standard of conduct *is not to be puritanical. In re Hopkins* (1909), 54 Wash. 569, 103 Pac. 805, 806." (Emphasis added.)

conviction of the *non-willful offense* of § 441 for not reporting the cash campaign contribution does not involve a crime of moral turpitude and therefore does not, standing alone, suffice as the basis for a § 4(b) disciplinary proceeding.

Cause dismissed.

HODGES, C. J., and IRWIN, BERRY, BARNES, SIMMS and DOOLIN, JJ., concur.

DAVISON and WILLIAMS, JJ., concur in result.