**STATE of Oklahoma, ex rel. OKLA-HOMA BAR ASSOCIATION, Complainant,**

v.

**Richard V. ARMSTRONG, Respondent.**

**No. SCBD 3600.**

Supreme Court of Oklahoma.

Jan. 30, 1990.

Dan Murdock, Oklahoma City, for complainant.

Fred P. Gilbert, Brewster, Shallcross & Rizley, Tulsa, for respondent.

SUMMERS, Justice.

On February 14, 1989 the respondent, Richard V. Armstrong, was given a suspended sentence of five (5) years and a $2,000 fine upon a conviction of Driving While Under the Influence of Intoxicating Liquor, Second Offense, for violating 47 O.S. § 11-902. The incident resulting in Respondent's conviction occurred January 31, 1986. The General Counsel of the Bar Association transmitted certified copies of the information and judgment of conviction to this court for a summary disciplinary proceeding in accordance with Rules 7.1-7.7 of the Rules Governing Disciplinary

Proceedings. A lawyer convicted of a crime is subject to discipline if the conviction demonstrates such lawyer's unfitness to practice law. 5 O.S.1981, Ch. 1, App. 1–A, Rule 7.1. That Rule states:

"A lawyer who has been convicted in any jurisdiction of a crime which demonstrates such lawyer's unfitness to practice law, regardless of whether the conviction resulted from a plea of guilty or nolo contendere or from a verdict after trial, shall be subject to discipline as herein provided, regardless of the pendency of an appeal."

Rule 7.3 of those Rules provides that "[u]pon receipt of the certified copies of such indictment or information and the judgment and sentence,[1] the Supreme Court shall by order immediately suspend the lawyer from the practice of law until further order of the court". We did not suspend the respondent but called for responses from both the Bar and the respondent as to whether Rule 7.1 applied to the proceeding.[2] Responses from both parties have been received. The Bar again requested that this court order the respondent's interim suspension[3] from the practice of law.

The issue at this point is whether the respondent's conviction demonstrates his unfitness to practice law. We find that such a determination cannot be made on the record as it stands presented to the court. We refer the proceeding to the Professional Responsibility Tribunal for a hearing with the appropriate findings, conclusions, and subsequent report to this court. In order to understand why such a result is called for in this case we must explain some of the recent procedures in summary disciplinary proceedings.

In 1951[4] this court would exercise its power in a summary disciplinary proceeding and suspend a lawyer's license to practice law when the court was notified that the lawyer had been convicted of a felony. 5 O.S.1951, Ch. 1, App. Article 6, Rule 3(8). The Rules were revised in 1958 and the provision remained the same, although renumbered. 5 O.S.Supp.1959, Ch. 1, App. 1, Art. VII, Part 2, § 7.

Two important changes were made when the Rules were revised in 1966. Discipline was no longer based upon a lawyer's conviction of "a felony" but on "a felony involving moral turpitude", and the lawyer was given the opportunity to show cause why discipline should not be imposed prior to the lawyer's interim suspension. 5 O.S. Supp.1967, Ch. 1, App. 1, Art. IX, § 11. This showing was made to the Bar which then transmitted the record and its recommendation concerning the discipline to the court. *Id.* See also the pre-suspension procedure described in *State ex rel. Oklahoma Bar Association v. Seelye,* 490 P.2d 1095, 1096 (Okla.1971).

1. Certified copies of the information and judgment and sentence are furnished to the Chief Justice of this court by the clerk of the court in which a lawyer is convicted and the General Counsel of the Bar Association. 5 O.S.1981, Ch. 1, App. 1–A, Rule 7.2.

2. This court used a similar procedure in *State ex rel. Oklahoma Bar Association v. Simms,* 590 P.2d 184 (Okla.1978). In that case we requested the parties to brief the issue of whether a conviction for violation of 26 U.S.C., § 7206(1) was an offense involving moral turpitude.

3. A suspension under Rule 7.3 is an interim or temporary suspension. After the court pronounces the order of suspension a respondent/lawyer may request that the suspension be set aside and upon a showing of good cause the court may set aside the suspension "when it appears to be in the interest of justice to do so". Rule 7.3. If the conviction becomes final without an appeal or affirmed on appeal, the court, with notice to the lawyer, pronounces a final order of discipline. Rule 7.4.

4. This jurisdiction has a long history of using a lawyer's conviction of a crime as a basis for discipline. In Territorial days a lawyer's conviction of a felony or a misdemeanor involving moral turpitude was sufficient cause for suspension or revocation of a license to practice law. *Wilson's Rev. & Ann. St. 1903,* §§ 232, 233. The procedure required the filing of the accusation or charges in a court of record, and then notice to the lawyer involved with an opportunity for the lawyer to respond. *Id.* at § 232. *See also, In re Brown,* 2 Okl. 590, 39 P. 469 (1895). The record of conviction was "conclusive evidence" of a charge alleging such conviction. See, § 232. This procedure was similar in the early days of Statehood. *Bunn's Revised Laws of Oklahoma, 1910,* §§ 251–254.

In 1971 the Rule was again changed in two important areas. Discipline was no longer based upon a lawyer's conviction of "a felony involving moral turpitude", but on "a crime involving moral turpitude". 5 O.S.1971, Ch. 1, App. 1, Art. X, § 4(b). The show cause opportunity was no longer made to the Bar but to the court. *Id.* Art. X at § 4(c). Then in 1977 the opportunity for a pre-suspension showing was changed to an opportunity for a post-suspension [5] showing. 5 O.S.Supp.1977, Ch. 1, App. 1, Art. X, § 4(b). This provision was explained in *State ex rel. Oklahoma Bar Association v. Jones,* 566 P.2d 130 (Okla. 1977). We said

> "[I]n the summary-type disciplinary proceedings authorized by § 4(b) and which are here involved, an important condition precedent must be satisfied. That condition is a member must have been convicted of a crime involving moral turpitude. The charge is constituted by the indictment or information, the judgment and sentence of conviction. These documents are conclusive evidence of the commission of the crime upon which the conviction is based. This alone is sufficient for discipline, coming within the framework of a show cause proceeding. At this point, the burden shifts to the charged member. He may seek a hearing with a right to submit a brief and evidence to explain his conduct or seek mitigation."

*Id.* 566 P.2d at 131. (Emphasis omitted). The 1981 version of the rules continued to provide for a post-suspension show cause hearing for the convicted lawyer. 5 O.S. 1981, Ch. 1, App. 1–A, Rules 7.3 and 7.4. However, the 1981 version no longer [6] provided for summary discipline based upon "a crime involving moral turpitude", but upon conviction of a crime "which demonstrates such lawyer's unfitness [7] to practice law". *Id.* at Rule 7.1. The 1981 version of Rules 7.1–7.7 is still in effect.

This review shows that under the former rules the scope of the court's inquiry was limited to ascertaining whether the lawyer was convicted of "a felony", "a felony involving moral turpitude", or "a crime involving moral turpitude". Facts attendant to a lawyer's conviction were not considered. Whether a lawyer's conviction constituted a crime involving moral turpitude was simply a matter of whether the crime involved such conduct due to the nature of the crime committed. *State ex rel. Oklahoma Bar Association v. Jones, supra.* Therein we said:

> "For the purpose of determining if there has been conviction of a crime involving moral turpitude, we cannot consider surrounding circumstances. In deciding whether moral turpitude is involved, we are limited to the charge contained in the documents permitted in the origination of the summary proceedings of § 4(b)." *Id.* 566 P.2d at 132.

Thus, the court imposed an interim suspension based solely on the nature of the crime committed. Generally, the court did not examine the surrounding circumstances of a conviction prior to the interim order of suspension; however, the court would consider such circumstances prior to the final order of discipline. *State ex rel. Oklahoma Bar Association v. Simms,* 590 P.2d 184, 185 (Okla.1978). The 1981 version of

5. This new rule became effective on February 17, 1977. 5 O.S.Supp.1977, Ch. 1, App. 1, Art. X, § 4. However, in at least one reported case arising after this date we allowed a respondent a pre-suspension show cause hearing as to why discipline should not be imposed. *State ex rel. Oklahoma Bar Association v. Armstrong,* 638 P.2d 1127, 1128 (Okla.1982).

6. The 1981 change in summary disciplinary proceedings is noted by the court in *State ex rel. Oklahoma Bar Association v. Cook,* 661 P.2d 531, 532 n. 1 (Okla.1983).

7. This language is similar to former DR 1–102(A)(6) which provided that "A lawyer shall not: (6) Engage in any other conduct that ad-

versely reflects on his fitness to practice law". 5 O.S.1981, Ch. 1, App. 3, DR 1–102(A)(6). The Code of Professional Responsibility, of which this Disciplinary Rule is a part, was superceded by the Rules of Professional Conduct effective July 1, 1988. 5 O.S.Supp.1988, Ch. 1, App. 3–A. The similar provision under the new Rules provides that it is professional misconduct for a lawyer to:

> "(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;"

*Id.* at Rule 8.4(b).

the Rule suggested departure from this practice.

The 1981 version allows an interim suspension of a lawyer's license to practice law based on a lawyer's conviction "of a crime which demonstrates such lawyer's unfitness to practice law". We believe the scope of inquiry includes the particular lawyer's unfitness to practice law and not merely the type of crime the lawyer stands convicted of. In the case of *Matter of Oliver*, 493 N.E.2d 1237 (Ind.1986), the Supreme Court of Indiana observed the following:

"Commission of some crimes establishes moral turpitude on its face. These include crimes that necessarily involve an intent to defraud, intentional dishonesty for personal gain, or behavior particularly repugnant to accepted moral standards. Commission of other offenses may or may not involve moral turpitude, and thus conviction of other offenses is not grounds for discipline without additional proof of circumstances surrounding the offense." *Id.* 493 N.E.2d at 1240.

What the Indiana court said with respect to crimes involving moral turpitude we believe to be applicable to crimes demonstrating a lawyer's unfitness to practice law. A lawyer's conviction of some crimes will, by itself, demonstrate such lawyer's unfitness to practice law. On the other hand, a lawyer's conviction for some kinds of illegal conduct will not facially demonstrate the lawyer's unfitness to practice law. This principle is recognized in a Comment to Rule 8.4 of the Rules of Professional Conduct. That Comment states in part:

"Many kinds of illegal conduct reflect adversely on fitness to practice law, such as offenses involving fraud and the offense of willful failure to file an income tax return. However, some kinds of offense carry no such implication. Traditionally, the distinction was drawn in terms of offenses involving 'moral turpitude.' That concept can be construed to include offenses concerning some matters of personal morality, such as adultery and comparable offenses, that have no specific connection to fitness for the practice of law. Although a lawyer is personally answerable to the entire criminal law, a lawyer should be professionally answerable only for offenses that indicate lack of those characteristics relevant to law practice. Offenses involving violence, dishonesty or breach of trust, or serious interference with the administration of justice are in that category. A pattern of repeated offenses, even ones of minor significance when considered separately, can indicate indifference to legal obligation." Comment, 5 O.S.Supp. 1988, Ch. 1, App. 3–A, Rule 8.4.

In *Oliver, supra,* the lawyer was convicted of Driving While Intoxicated, a misdemeanor. In the case before this court the lawyer was convicted of a felony. Clearly, when a member of the bar is convicted of a felony such conduct brings the bench and bar into disrepute. *Kentucky Bar Association v. Jones,* Ky., 759 S.W.2d 61, 63 (1988). In the case before us the lawyer's conviction is based upon an improper use of alcohol. Discipline as severe as disbarment may be the appropriate measure to protect the public when a lawyer is found to have a drug and/or alcohol problem which impairs the lawyer's competence as an attorney. *Matter of Lovell,* 257 Ga. 193, 357 S.E.2d 92 (1987). In response to these concerns the respondent argues that he has successfully completed rehabilitation programs and that his fitness to practice law is not presently impaired.

In the case of *In re Carr,* 46 Cal.3d 1089, 252 Cal.Rptr. 24, 761 P.2d 1011 (1988), the court imposed discipline on a lawyer who had been convicted of driving under the influence of alcohol on two occasions. However, the court first referred the two convictions to the State Bar for a hearing, report and recommendation as to whether the circumstances surrounding the offense warranted discipline and, if so found, the discipline to be imposed. *Id.* 252 Cal.Rptr. at 24, 761 P.2d at 1011. A similar procedure is called for in the case before us today.

We refer the matter to a trial panel of the Professional Responsibility Tribunal. The issue before the trial panel will be the respondent's "fitness" to practice law.

The Judgment and Sentence of conviction is conclusive proof of the conviction and no further evidence of such is necessary. The trial panel should receive evidence of whether the respondent's use of alcohol impairs or tends to impair his ability to conduct efficiently and properly the affairs undertaken for a client in the practice of law. See Rule 10.1(c) of the Rules Governing Disciplinary Proceedings. Relevant evidence would include the history of respondent's use of alcohol prior to, during, and after his conviction. Evidence of the respondent's alleged treatment for alcohol abuse and any evidence offered in mitigation by the respondent is also relevant. Relevant evidence might include testimony of the respondent's reputation in the community with respect to his past or present use of alcohol, and whether any such reputation affects his ability to practice law. *See, Matter of Oliver*, 493 N.E.2d at 1242.

The Judgment and Sentence of conviction is already of record in this proceeding. The trial panel should consider such conviction in light of the surrounding circumstances, as shown by the evidence before the panel, and recommend whether such conviction demonstrates the respondent's unfitness to practice law. The trial panel shall then file a report with this court in conformity with 5 O.S.1981, Ch. 1, App. 1–A, Rule 6.13.

OPALA, V.C.J., and HODGES, DOOLIN and ALMA WILSON, JJ., concur.

KAUGER, J., concur in result.

HARGRAVE, C.J., and LAVENDER, J., dissent.

SIMMS, J., disqualified.